UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

In re:

Walter Kakareko III,

                 Debtor.

--------------------------------------------------------------------X

Trustees of the Sheet Metal Workers' National
Pension Fund; Trustees of the National Energy
Management Institute Committee for the
Sheet Metal and Air Conditioning Industry;
Trustees of the Sheet Metal Occupational
Health Institute Trust; Trustees of the
International Training Institute for the Sheet
Metal and Air Conditioning Industry; and
Trustees of the National Stabilization
Agreement of the Sheet Metal Industry Fund,

                 Plaintiffs,

            -against-

Walter Kakareko III,

                 Defendant.

--------------------------------------------------------------------X

Chapter 7

Case No: 14-73390-las

Adv. Pro. No. 14-08229-las

## <u>MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

### I.    <u>Introduction</u>

Plaintiffs Sheet Metal Workers' National Pension Fund ("NPF"), National Energy

Management Institute Committee for the Sheet Metal and Air Conditioning Industry

("NEMIC"), Sheet Metal Occupational Health Institute Trust ("SMOHIT"), International

Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), and National

Stabilization Agreement of the Sheet Metal Industry Fund ("SASMI") (collectively,

"plaintiffs") bring this action asserting that the debt owed them by defendant Walter

Kakareko III ("defendant"), the debtor in this chapter 7 case, is not dischargeable under 11

U.S.C. § 523(a)(4).[1]  Nondischargeability under § 523(a)(4) requires a showing that the debt at issue was obtained by (i) fraud or defalcation while acting in a fiduciary capacity, (ii) embezzlement, or (iii) larceny.  In their complaint, plaintiffs allege that they are employee benefit plans under Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., and that their debt in the amount of $448,588.80 arises out of the failure of All Seasons Siding, Inc. ("All Seasons") to pay outstanding employer contributions to plaintiffs pursuant to certain collective bargaining agreements for which defendant is personally liable.  Plaintiffs contend that defendant, as an officer of All Seasons, had authority and control over the management and disposition of employee benefit plan assets, and the failure of All Seasons to account for and pay over employee benefit fund contributions renders its debt nondischargeable under § 523(a)(4) based upon defendant's defalcation while acting in a fiduciary capacity.

Now before the Court is plaintiffs' motion for summary judgment [Adv. Dkt. No. 11][2] pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7056.  Defendant filed opposition to the motion, and plaintiffs replied.  The Court has carefully reviewed the moving, opposing and reply papers and considered the parties' oral argument.  For the reasons discussed in this Memorandum Opinion and Order, material issues of fact preclude summary judgment, and on that basis, the motion is denied.

## II.    **Jurisdiction**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and the Standing Order of Reference entered by the United States District Court for the Eastern

[1] Unless otherwise stated, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*., and will hereinafter be referred to as "§ (section number)".

[2] Unless otherwise stated, citations to docket entries in the adversary proceeding. Adv. Pro. No. 14-08229-las, are cited as "(Adv. Dkt. No. ____)".

District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011. Consideration of the motion is a core proceeding under 28 U.S.C. § 157(b)(2) in which final orders or judgment may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

### III.   Background

#### a.   Factual Background[3]

Plaintiffs are multi-employer, employee benefit funds within the meaning of Section 3(3) of ERISA. Pls.' 7056-1 ¶ 1; Strang Decl., Exhibits C, D and E; *see* 29 U.S.C. § 1002(3). Defendant was a principal owner and President of All Seasons, a New York corporation engaged in the installation and repair of sheet metal exteriors for commercial structures. Pls.' 7056-1 ¶ 3; Def. Aff. ¶ 2; April 2014 Dep. 12:10-23. Originally a 50% shareholder when he began working at All Seasons in 1994, defendant's ownership interest was increased to 80% around 2009.[4] April 2014 Dep. 8:12-13:17.

All Seasons entered into collective bargaining agreements under which All Seasons was obligated to make certain contributions to plaintiffs based upon the hours worked by the participants employed by All Seasons.[5] April 2014 Dep. 16:9-17:17; Def. 7056-1 ¶ 5.

---

[3] The Court's account of the underlying facts is drawn from the parties' pleadings, plaintiffs' submissions in support of the motion for summary judgment, including plaintiffs' Local Bankruptcy Rule 7056-1 Statement ("plaintiffs' Rule 7056-1 Statement" or "Pls.' 7056-1") [Adv. Dkt. No. 11-1], the declaration of Amy E. Strang, Esq. (the "Strang Declaration" or "Strang Decl.") [Adv. Dkt. No. 11-3], defendant's November 7, 2014 deposition ("November 2014 Dep.") [Strang Decl., Exhibit K], defendant's April 23, 2014 deposition ("April 2014 Dep.") [Strang Decl., Exhibit M], and the June 5, 2014 deposition testimony of Patricia Egan ("Egan Dep.") [Strang Decl., Exhibit Q], and defendant's submissions in support of his opposition to the motion [Adv. Dkt. No. 16], including defendant's affidavit ("Def. Aff.") [Adv. Dkt. No. 16-1], and defendant's Rule 7056-1 Statement ("Def. 7056-1") [Adv. Dkt. No. 16-2].

[4] Charles H. Henneborn ("Henneborn"), Vice President of All Seasons, held the remaining shares. Henneborn filed for chapter 7 relief on June 19, 2013 (*See* Case No. 13-73280-las). Plaintiffs filed a similar complaint against Henneborn (*See* Adv. Pro. No. 13-8111-las).

[5] Neither party expressly states whether the delinquent contributions at issue here are employer contributions or employee contributions. Paragraphs 13 and 18 of the complaint refer to employer contributions and paragraphs 5 and 16 of plaintiffs' 7056-1 statement likewise refers to employer contributions. In addition, upon review of the collective bargaining agreements, it appears the contributions at issue are employer contributions. As such, the Court will assume that the delinquent contributions are employer contributions for purposes of plaintiffs' motion.

Pursuant to the collective bargaining agreements, All Seasons was required to make contributions to plaintiffs for the period of January 1, 2009 through February 28, 2013.  Pls.' 7056-1 ¶ 16; Strang Decl. Exhibit C, Art. XII B, Exhibit D, Art. XII B, Exhibit E, Art. XII B. Plaintiffs are third party beneficiaries of the collective bargaining agreements.  Pls.' 7056-1 ¶ 5, 6; Strang Decl., Exhibit C, Art. XII B; Exhibit D, Art. XII B; Exhibit E, Art. XII B.  The collective bargaining agreements incorporate by reference certain agreements and declarations of trust of plaintiffs.  Pls.' 7056-1 ¶ 7; Strang Decl., Exhibit C, Art. XII B, Sections 21C and 24A; Exhibit D, Art. XII B, Sections 21C and 24A; Exhibit E, Art. XII B, Sections 21C and 24A.  The collective bargaining agreements provided, *inter alia*:

> Contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer.

Pls.' 7056-1 ¶ 9; Strang Decl., Exhibit C, Art. XII A, Section 19.B, Art. XII B, Section 24.B; Exhibit D, Art. XII A, Section 19.B, Art. XII B Section 24.B; Exhibit E, Art. XII A, Section 19.B, Art. XII B, Section 24.B.

On July 17, 2012, defendant and Henneborn signed a confessed judgment note agreeing that All Seasons, and defendant and Henneborn, individually, owed plaintiffs $229,596.27 in delinquent contributions, interest and liquidated damages.  Strang Decl., Exhibit P.

### b.  Procedural History

Defendant filed a voluntary petition for chapter 7 relief on July 25, 2014.  On November 10, 2014, NPF filed a proof of claim for $448,588.80 constituting unpaid contributions, plus interest and liquidated damages, in defendant's bankruptcy case.

On August 15, 2014, plaintiffs filed a complaint against defendant. [Adv. Dkt. No. 1]. Plaintiffs' claim is premised on defendant's exercise of authority or control over the management or disposition of certain assets of plaintiffs within the meaning of Section 1002(21)(A) of ERISA. Compl. ¶¶ 28, 35. Plaintiffs alleged that plan assets include the unpaid employer contributions, and defendant determined whether All Seasons timely made contributions to plaintiffs. Compl. ¶¶ 14, 29-34. Plaintiffs contend that by exercising control over plan assets defendant is an ERISA fiduciary within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21)(A), and defendant breached his fiduciary duty by permitting plan assets to be used for purposes other than payment to plaintiffs. Compl. ¶¶ 37, 38, 40.

Defendant answered the complaint. [Adv. Dkt. No. 3]. In his answer, defendant asserted that he did not exercise authority or control over the management or disposition of corporate assets, nor did he have authority and control over contributions by All Seasons to plaintiffs. Ans. ¶¶ 6, 11.

Plaintiffs filed the motion for summary judgment claiming that defendant's debt for unpaid contributions was nondischargeable under § 523(a)(4) because his failure to make the required contributions to plaintiffs constituted defalcation while acting in a fiduciary capacity. Defendant filed opposition. [Adv. Dkt. No. 16]. Defendant argued that: (1) he did not have the requisite intent for defalcation as set forth by the Supreme Court in *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013); (2) intent under § 523(a)(4) is a fact intensive question that cannot be decided on summary judgment; (3) the relationship between defendant and plaintiffs is not a trust relationship as required by § 523(a)(4); (4) the absence of an express trust indicates that defendant did not possess the requisite intent; and (5) defendant did not act as a fiduciary to plaintiffs. *Id.* Plaintiffs filed a reply in further support of the motion, arguing that (i) defendant was a fiduciary under ERISA and for purposes of § 523(a)(4) and (ii) defendant consciously disregarded a substantial and unjustifiable risk that

5

his conduct would violate his fiduciary duties.  [Adv. Dkt. No. 18].  After the Court heard oral argument, the motion was marked submitted.

## IV.    **Legal Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7056, summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' ") (quoting former Fed. R. Civ. P. 56(c)).  A fact is considered material if it "might affect the outcome of the suit under the governing law," and a genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex,* 477 U.S. at 322-23.  The evidence on each material element of its claim or defense must be sufficient to entitle the moving party to relief in its favor as a matter of law. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004).

If the movant meets its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v.*

*Baines,* 593 F.3d 159, 166 (2d Cir. 2010).   Thus, to meet its burden, the nonmoving party

must offer more than a "scintilla of evidence" that a genuine dispute of material fact exists,

*Anderson*, 477 U.S. at 252, or that there is some "metaphysical doubt as to the material facts."

*Matsushita,* 475 U.S. at 586.   It must present "significant probative evidence" that a genuine

issue of fact exists.   *Anderson*, 477 U.S. at 249 (internal citations and quotations marks

omitted).   In addition, "[o]nly admissible evidence need be considered by the trial court in

ruling on a motion for summary judgment." *Porter v Quarantillo*, 722 F.3d 94, 97 (2d Cir.

2013) (internal quotation marks and citation omitted).

On a motion for summary judgment, the court must "construe all evidence in the light

most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities

in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).   The Court's job is

"not to weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.,* 310

F.3d 243, 254 (2d Cir. 2002).   "Assessments of credibility and choices between conflicting

versions of the events are matters for the jury, not for the court on summary judgment."

*Jeffreys v. N.Y.C.,* 426 F.3d 549, 553-54 (2d Cir. 2005) (citation omitted).   A court should grant

the motion if "the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there [being] no genuine issue for trial." *Matsushita*, 475 U.S. at 587

(internal quotation marks omitted).

## V.    **Discussion**

Plaintiffs have the burden of demonstrating that their debt is nondischargeable by a

preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991).   "[E]xceptions to

discharge are to be narrowly construed and genuine doubts should be resolved in favor of the

debtor." *Denton v. Hyman (In re Hyman),* 502 F.3d 61, 66 (2d Cir. 2007).   This is consistent

with the fresh start policy of the Bankruptcy Code. *See Marrama v. Citizens Bank of Mass.,*

549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.' ") (citation omitted).

To prevail on a claim that a debt is nondischargeable under § 523(a)(4) by reason of defalcation while acting in a fiduciary capacity, a plaintiff must prove three elements – "first, that the debt was incurred in connection with an express or technical trust, second, that the debtor acted in a fiduciary capacity with respect to that trust, and third, that the debtor engaged in fraud or a defalcation within the meaning of bankruptcy law." *VW Credit, Inc. v. Salim (In re Salim),* No. 13-01442-ess, 2015 WL 1240000, at *14 (Bankr. E.D.N.Y. Mar. 16, 2015); *N.Y. v. Suarez (In re Suarez),* 367 B.R. 332, 351 (Bankr. E.D.N.Y. 2007); *Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005).  The Court will address each of the elements in turn.

### a.  Express or Technical Trust.

The first requirement under § 523(a)(4) is that the debt must arise from an express or technical trust.   "Section 523(a)(4) applies only to express or technical trusts, not to constructive trusts, implied trusts, or trusts implied on the basis of wrongful conduct."  *In re Duncan,* 331 B.R. at 77 (citations omitted).  According to the Supreme Court in *Davis v. Aetna Acceptance Co.*:

> It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio.  He must have been a trustee before the wrong and without reference thereto . . . the language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created.

*Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934) (internal citations and quotations omitted).

An express trust "is initiated by one entity's transfer of property to another entity coupled with a manifestation of an intention to create a trust."  *In re Suarez,* 367 B.R. at 351

(citations omitted).  Although often created by contract, a trust relationship for purposes of § 523(a)(4) is not confined to trusts arising under a formal trust agreement, nor to those expressly imposed by statute.  *See In re Parker,* 388 B.R. 11, 18 (Bankr. N.D.N.Y. 2008). "Courts have extended § 523(a)(4) to 'relationships in which 'technical trust type' obligations are imposed pursuant to statute or common law.' " *In re Suarez,* 367 B.R. at 352 (quoting *Hutton v. Schulman* (*In re Schulman*), 196 B.R. 688, 697 (Bankr. S.D.N.Y. 1996)).  Where the basis for the existence of a technical trust is statutory, the statute must: (1) define the trust res; (2) identify the fiduciary's obligations; and (3) impose fiduciary obligations prior to and without reference to the alleged wrongdoing that created the debt.  *In re Duncan*, 331 B.R. at 81 (citing *Blyler v. Hemmeter* (*In re Hemmeter*), 242 F.3d 1186, 1190 (9th Cir. 2001)).  The Supreme Court has noted that "ERISA abounds with the language and terminology of trust law." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989); *see also In re Duncan*, 331 B.R. at 77 (citing *Friedlander v. Doherty*, 851 F. Supp. 515, 520 (N.D.N.Y. 1994)) ("Both the language and the legislative history of ERISA suggest that Congress intended traditional concepts of trust law to be applied to cases brought under ERISA.").

Courts have held that ERISA-covered employee benefit plans are trusts for purposes of § 523(a)(4).  *See, e.g., Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 689-90 (B.A.P. 1st Cir. 2012); *In re Hemmeter*, 242 F.3d at 1190; *Sheet Metal Workers' Nat'l Pension Fund v. Kern* (*In re Kern*), 542 B.R. 87, 95-96 (Bankr. E.D.N.Y. 2015); *In re Duncan*, 331 B.R. at 78-80; *Shephard v. O'Quinn (In re O'Quinn)*, 374 B.R. 171, 178-82 (Bankr. M.D.N.C. 2007); *Tr. of the Colo. Ironworkers Pension Fund v. Gunter (In re Gunter)*, 304 B.R. 458, 461-62 (Bankr. D. Colo. 2003); *Eavenson v. Ramey*, 243 B.R. 160, 166 (N.D. Ga. 1999); *Cochran v. Coleman (In re Coleman)*, 231 B.R. 393, 395-96 (Bankr. S.D. Ga. 1999).

The undisputed facts and documentary evidence presented by plaintiffs establish that the employer benefit plan at issue satisfies the elements of a technical trust under § 523(a)(4). Plaintiffs are employee welfare benefit plans within the meaning of ERISA.  29 U.S.C. § 1002(1).[6]  All Seasons was an "employer" as defined under ERISA.  29 U.S.C. § 1002(5).  All Seasons entered into contracts with plaintiffs that required it to make contributions to plaintiffs for hours worked by plan participants employed by All Seasons.   The collective bargaining agreements and trust agreements contain trust and ERISA language.  *See* Strang Decl., Exhibits D-K.  The trust res is the employee welfare benefit plan itself.  *See* 29 U.S.C. § 1102; *see also Eavenson*, 243 B.R. at 166.  ERISA defines the duties of an ERISA fiduciary. *See* 29 U.S.C. § 1104.  "These duties necessarily arise upon creation of an ERISA plan and predate the creation of any debt to the plan participant creditor."  *In re Hemmeter,* 242 F.3d at 1190.  Here, the trust was in place when the alleged defalcation, or the nonpayment of employer contributions, occurred.   Accordingly, the Court finds that the ERISA employee benefit plans before it are trusts for purposes of § 523(a)(4), and, thus, the first element of the defalcation exception has been satisfied.

### b.  Fiduciary Capacity.

Next, the Court must determine whether defendant acted with "fiduciary capacity" under § 523(a)(4).  Plaintiffs argue that defendant had fiduciary capacity under § 523(a)(4) because by exercising authority or control over the management or disposition of plan assets, defendant is a fiduciary under ERISA, and an ERISA fiduciary is a fiduciary for purposes of

---

[6] ERISA defines "employee welfare benefit plan" as: any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).  29 U.S.C. § 1002(1).

§ 523(a)(4). There is a split in authority as to whether an ERISA fiduciary *per se* satisfies the fiduciary standard under § 523(a)(4). *See In re Kern,* 542 B.R. at 96-97 (collecting cases). As noted in *Kern,* the Second Circuit Court of Appeals has not ruled on this issue, but courts in the Second Circuit have found that an ERISA fiduciary *per se* satisfies the fiduciary requirement of § 523(a)(4). *Id.* The court in *Kern* concluded that an ERISA fiduciary is a fiduciary for § 523(a)(4) purposes. *Id.* at 97-98 ("Because ERISA is a federal law and fiduciary status and defalcation under the Bankruptcy Code are also determinations made under federal law, this Court finds no compelling reason to hold that an ERISA fiduciary is not a *per se* fiduciary for § 523(a)(4) purposes.").

Before this Court decides whether to follow the courts that have adopted the *per se* test, it must first determine if defendant is an ERISA fiduciary. Plaintiffs ask this Court to find that defendant breached his fiduciary obligations owed to plaintiffs under ERISA by permitting plan assets to be used for purposes other than to pay All Seasons' requisite contributions to plaintiffs. The inquiry, therefore, must begin with whether defendant is a fiduciary under ERISA. *See Pegram v. Herdrich,* 530 U.S. 211, 226 (2000) ("[T]he threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint").

"[ERISA] provides that not only the persons named as fiduciaries by a benefit plan but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets is an ERISA 'fiduciary.' " *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 251 (1993) (internal citations omitted). Under ERISA,

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or

> responsibility to do so, or (iii) or he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see also Mertens,* 508 U.S. at 262 ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan . . ."); *LoPresti v. Terwilliger,* 126 F.3d 34, 40 (2d Cir. 1997) ("Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional.") (citation omitted). "The definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control." *Blatt v. Marshall and Lassman,* 812 F.2d 810, 813 (2d Cir. 1987).

Plaintiffs do not allege that defendant is a named fiduciary under the plan. Plaintiffs solely argue that defendant exercised authority or control over the management or disposition of plan assets and he is, therefore, an ERISA fiduciary under subparagraph (i) of 29 U.S.C. § 1002(21)(A). To prevail on this argument, plaintiffs must show that (i) All Seasons' unpaid contributions are assets of the plan and (ii) defendant exercised authority or control over the management or disposition of plan assets sufficient to make him an ERISA fiduciary. The Court begins its analysis with whether the unpaid employer contributions at issue here were plan assets. If so, then the Court must analyze whether defendant exercised authority or control with respect to the management or disposition of those plan assets sufficient to make him an ERISA fiduciary. *Rahm v. Halpin (In re Halpin),* 566 F.3d 286, 289 (2d Cir. 2009).

### 1. *Whether Plan Assets Include Unpaid Employer Contributions*

In *Halpin*, the Second Circuit found that unpaid employer contributions are not plan assets. *Id.* at 290-91. An employer does not become a fiduciary of plan assets simply because he has a contractual obligation to pay contributions to an employee benefit fund. *Id.* However, the Second Circuit did note that parties were "free to contractually provide for some

other result." *Id.* at 290.   Therefore, the rights and obligations created by the underlying agreement determine when an employer's contribution becomes a plan asset. *United States v. Panepinto*, 818 F. Supp. 48, 51 (E.D.N.Y. 1993).   Delinquent contributions are plan assets if the underlying agreement creating the benefit fund defines them as such. *Tr. of the Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Philip Gen. Const.,* No. 05CV1665 (NG)(RLM), 2007 WL 3124612, at *5 (E.D.N.Y. Oct. 23, 2007).

Here, the collective bargaining agreements expressly provide that "[e]mployer contributions are considered assets of the respective Funds and title to all monies paid into *and/or due and owing* said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds. The Employer shall have no legal or equitable right, title, or interest in or to any sum paid by or *due from the Employer*."   Strang Decl., Exhibit C, Art. XII.A, Section 19.B, Art. XII.B, Section 24.B; Exhibit D, Art. XII.A, Section 19.B, Art. XII.B Section 24.B; Exhibit E, Art. XII.A, Section 19.B, Art. XII.B, Section 24.B (emphasis added).   The trust agreements define "contributions" in numerous ways: (i) NPF defines contributions as "monies *required to be paid* to the Fund by Employers" *Id.*, Exhibit F, Art. I, Section 5 (emphasis added); (ii) NEMIC, SMOHIT and ITI define contributions as "the money paid or payable into the Trust Fund by an Employer, *Id.*, Exhibits G, H, and I, Art. I, Section 6; and (iii) SASMI finds contributions to "mean the contributions made or *required to be made* by Employers to the Fund." *Id.*, Exhibit J, Art. I, Section 4 (emphasis added).

Accordingly, based upon the record placed before it, the Court finds that the language of the collective bargaining agreements and trust agreements supports plaintiffs' theory that unpaid contributions owed by All Seasons to plaintiffs constitute plan assets under ERISA. *See Halpin,* 566 F.3d at 290.   Having so found, the Court will now address whether plaintiffs

have demonstrated that defendant exercised the requisite authority or control over plan assets to be a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i).

### 2. *Whether Defendant is an ERISA Fiduciary*

To constitute an ERISA fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i), defendant must have exercised authority or control over the management or disposition of plan assets. The provision does not specify that the control must be exclusive. Rather, ERISA requires a showing of "*actual* control over the disposition of plan assets." *Blatt*, 812 F.2d at 813. In *LoPresti*, the Second Circuit addressed whether two shareholders with alleged control over plan assets were ERISA fiduciaries under a collective bargaining agreement. Both shareholders had check signing authority for the company's bank accounts, and both signed checks which were forwarded to the union pursuant to the collective bargaining agreement. *LoPresti*, 126 F.3d at 37-41. The 51% shareholder was found to be an ERISA fiduciary because he had a role in determining which bills of the company to pay, commingled plan assets with the company's general assets, and used those plan assets to pay creditors other than the union. *Id.* at 40 ("[T]his Court is convinced that Donald's commingling of plan assets with the Company's general assets, and his use of those plan assets to pay Company creditors, rather than forwarding the assets to the Funds means that he 'exercise[d] . . . authority or control respecting . . . disposition of [plan] assets,' and hence is a fiduciary for purposes of imposing personal liability under ERISA."). The 49% shareholder did not sign the collective bargaining agreement, but was "aware generally" that deductions from employee wages were placed into the company's general operating account to be paid to the union when the bills were due. *Id.* at 37. The Second Circuit agreed with the district court's findings that the 49% shareholder was primarily a "production" person with "no responsibility for determining which of the company's creditors would be paid or in what order." *Id.* at 40-41. The Second

Circuit found that he was not an ERISA fiduciary and could not be held personally liable for any breach of fiduciary duty. *Id.* at 41.

Within this framework, the Court considers the evidence submitted by plaintiffs on the issue of whether defendant is an ERISA fiduciary. Defendant admitted in his deposition that he was a signatory on All Seasons' checking accounts and determined whether or not contributions were made by All Seasons to plaintiffs. April 2014 Dep. 21:20-22:6, 22:17-23, 28:2-15. At his April 23, 2014 deposition, defendant testified as follows:

> **Q:** During the time period that you were contributing to the National Pension Fund, who made the decision of how much to pay the National Pension Fund, during the time period of January 1, 2009 through February 28, 2013?
>
> **A:** Myself and [Henneborn].
>
> **Q:** Who were signatories to the checking accounts of All Seasons, during January 1, 2009 through February 28, 2013?
>
> **A:** [Henneborn] and I.
>
> **Q:** Was there anybody else that was allowed to sign checks?
>
> **A:** No.
>
> **Q:** When [Egan] sent remittance records and payments to the National Pension Fund, were they electronic or were they through a check?
>
> **A:** Through a check, I believe.
>
> **Q:** Who would sign these checks?
>
> **A:** [Henneborn] and I.
>
> **Q:** Who instructed [Egan] how much to pay to the National Pension Fund?
>
> **A:** She would actually figure it out, what we owed. We would pay that, if we could.
>
> **Q:** If you couldn't, would you tell her how much to pay?
>
> **A:** Yes.

April 2014 Dep. 21:20-22:23.

Plaintiffs' assertion that defendant was a fiduciary under 29 U.S.C. § 1002(21)(A)(i) at the time of the alleged wrongdoing is further buttressed by the deposition testimony of Egan, All Season's bookkeeper.  At her June 5, 2014 deposition, Egan testified, *inter alia,* that (1) defendant had check signing authority over All Seasons checking account [Egan Dep. 19:13-16], (2) defendant and Henneborn determined how much money was paid each month when remittance reports were submitted to the National Pension Fund [Egan Dep. 10:3-20], and (3) when All Seasons did not have sufficient funds to pay the National Pension Fund, defendant and Henneborn made determinations as to how much was paid each month [Egan Dep. 10:3-11:14].

Accordingly, based upon the record placed before it, the Court finds that defendant exercised authority or control over the disposition of plan assets and is an ERISA fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i).  *See LoPresti*, 126 F.3d at 40.

### 3.  *ERISA Fiduciaries and § 523(a)(4) Fiduciary Capacity*

Having concluded that defendant was an ERISA fiduciary, the Court now addresses whether defendant was acting in a fiduciary capacity at the time of the alleged wrongdoing for purposes of § 523(a)(4).  "Fiduciary capacity" is not defined in the Bankruptcy Code.  The meaning of fiduciary is determined by federal law.  *In re Duncan,* 331 B.R. at 80.  "The broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)(4)."  *Zohlman v. Zoldan,* 226 B.R. 767, 772 (S.D.N.Y. 1998).  The term "fiduciary" under § 523(a)(4) is to be narrowly construed so that it does not include mere debtor-creditor relationships in which the debtor violated the terms of a purely commercial agreement.  *Id.*

As noted earlier in this Opinion, the Second Circuit Court of Appeals has not yet determined that an ERISA fiduciary *per se* satisfies the fiduciary requirement of § 523(a)(4). However, courts in the Second Circuit and in other jurisdictions have so found.  *See In re*

*Kern,* 542 B.R. at 97 ("[A]n ERISA fiduciary is a fiduciary for § 523(a)(4) purposes."); *In re Duncan*, 331 B.R. at 82 ("[W]here the debt arises from an ERISA fiduciary acting in his or her fiduciary capacity under the statute, then § 523(a)(4)'s requirement that the debtor act in a fiduciary capacity will be met."); *In re Fahey*, 482 B.R. at 695 ("we conclude that where the debt arises from an ERISA fiduciary acting in his fiduciary capacity under that statute, then § 523(a)(4)'s 'fiduciary capacity' requirement will be met"); *In re Hemmeter*, 242 F.3d at 1190.  In *Hemmeter*, the Ninth Circuit explained:

> In general, a statutory fiduciary is considered a fiduciary for the purposes of § 523(a)(4) if the statute: (1) defines the trust res; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the alleged wrongdoing . . . The trust res is identified by the creation of the plan itself.  29 U.S.C. § 1102.  ERISA also defines the fiduciary's fund management duties. *See, e.g.,* 29 U.S.C. §§ 1103-1104.  These duties necessarily arise upon creation of an ERISA plan and predate the creation of any debt to the plan participant creditor . . . ERISA imposes obligations on the fiduciary prior to the alleged wrongdoing. Thus, ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a fiduciary under § 523(a)(4).

*In re Hemmeter,* 242 F.3d at 1190 (citations omitted).

Here, plaintiff has presented ample evidence (i) that ERISA defined the trust res, identified the ERISA fiduciary's duties and imposed obligations on the fiduciary prior to and without reference to the alleged wrongdoing that created the debt owed to plaintiffs, and (ii) that defendant exercised sufficient discretionary authority or control over plan assets in *functional* terms to support this Court's finding that he acted in fiduciary capacity for purposes of § 523(a)(4).  *See In re Hemmeter*, 242 F.3d at 1190; *In re Duncan*, 331 B.R. at 80-82; *In re Fahey,* 482 B.R. at 695-96.

Accordingly, based on the record placed before it, the Court finds that defendant, an ERISA fiduciary, had fiduciary capacity under § 523(a)(4).

### c. Defalcation

Having found that defendant acted in fiduciary capacity for purposes of § 523(a)(4), the Court must now determine whether the debt owed to plaintiffs arose from defendant's defalcation. On this element of nondischargeability, the Court finds that the question of whether defendant defalcated with the requisite intent is a factual question that is not indisputably resolved by the evidence submitted by plaintiffs. A genuine issue of material fact exists with respect to defendant's intent under the standard set forth by the Supreme Court in *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013). In *Bullock*, the Supreme Court held that defalcation "includes a culpable state of mind requirement . . . [or] one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 1757.[7] In so concluding, the Supreme Court stated:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty . . . That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."

*Id.* at 1759-60 (emphasis in original; citations omitted).

"By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard . . . insures that the harsh sanction of non-dischargeability is reserved for those who exhibit some portion of

---

[7] The Supreme Court recognized that the Second Circuit interpreted "defalcation" similarly for years without difficulty. *Id.* at 1761 (citing *In re Hyman*, 502 F.3d at 69 (defining defalcation as "conscious misbehavior or extreme recklessness")).

misconduct." *In re Hyman*, 502 F.3d at 68-69 (internal quotations and citations omitted). The risk that the debtor must consciously disregard is "the risk [that] the conduct might violate a fiduciary duty, rather than [the risk] of a resultant injury, loss or harm to the beneficiary." *Cincinnati Ins. Co. v. Chidester* (*In re Chidester*), 524 B.R. 656, 661 (Bankr. W.D. Va. 2015).

A debtor's state of mind is a crucial element in resolving a § 523(a)(4) cause of action. *Curtis Lumber Co., Inc. v. Waldron* (*In re Waldron*), No. 13-12190, Adv. No. 14-90008, 2015 WL 6734481, at *6 (Bankr. N.D.N.Y. Nov. 3, 2015); *see also Wang v. Ke* (*In re Shao Ke*), No. 09-32272, Adv. No. 09-50132, 2013 WL 4170250, at *12 (Bankr. N.D.N.Y. Aug. 14, 2013) *appeal denied, judgment aff'd sub nom. Ke v. Wang*, No. 5:13-CV-1203-GTS, 2014 WL 4626329 (N.D.N.Y. Sept. 15, 2014) *aff'd*, No. 14-3824, 2015 WL 5805954 (2d Cir. Oct. 6, 2015) ("In light of the standard set by the Supreme Court in *Bullock*, Debtor's credibility is highly relevant to [plaintiff's] § 523(a)(4) nondischargeability claim."). A debtor's constructive knowledge will not suffice to show the requisite knowledge for a defalcation. *Chitester v. Watterson* (*In re Watterson*), 524 B.R. 445, 452 (Bankr. E.D.N.Y. 2015) (citing *Cupit v. Cupit (In re Cupit)*, 514 B.R. 42, 51 (Bankr. D. Colo. 2014) ("There must be some evidence that the debtor was aware of the fiduciary duty and of the risk that his conduct would violate that duty.")). A debtor must have actual knowledge. *Id.* "The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one." *Terrydale Liquidating Trust v. Barness,* 611 F. Supp. 1006, 1027 (S.D.N.Y. 1984).

The *Chitester* court rejected the idea that a debtor's knowledge of his duties alone was "sufficient to impute an actual purposeful *mens rea*" and that a debtor's "constructive knowledge" of fiduciary duties satisfied the *Bullock* standard. *In re Chitester*, 524 B.R. at 663, n. 25. "[S]imply imputing knowledge of a statutory fiduciary duty will not suffice to

establish recklessness . . . A debtor cannot *consciously* disregard a risk of violating a fiduciary duty if he or she is wholly unaware of that duty." *In re Cupit*, 514 B.R. at 51.  A debtor must act with the knowledge that his or her conduct amounts to a breach of fiduciary duty or must consciously disregard the substantial and unjustifiable risk that such conduct will constitute a breach of fiduciary duty.  *Borsos v. United Healthcare Workers-West (In re Borsos)*, No. 10-53374, 2013 WL 2480657, at *4 (B.A.P. 9th Cir. June 10, 2013).

It is well-established that summary judgment is generally inappropriate where issues of knowledge, intent, state of mind, motive, sincerity, conscience and other subjective feelings are implicated.  *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 16 (2d Cir. 1993); *see also Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984) (gathering cases);  *Shoenbaum v. Firstbrook,* 405 F.2d 215, 218 (2d Cir. 1968) (opining that issues of knowledge, intent and motive require a full trial at which the court may observe the demeanor of witnesses).  A finding of intent largely turns on the court's assessment of a witness' credibility.  *Hernandez v. New York*, 500 U.S. 352, 353 (1991);  *see also Heers v. Parsons (In re Heers)*, 529 B.R. 734, 747 (B.A.P. 9th Cir. 2015) ("Assessing credibility and choosing between two or more possible inferences are tasks that simply cannot be performed properly in the process of ruling on a summary judgment motion.");  *In re Watterson*, 524 B.R. at 453 ("In determining whether the Debtor had the requisite state of mind to meet the defalcation standard, the Court looks to the witness's credibility and the evidence presented.").

Here, plaintiffs argue that defendant had actual knowledge of his wrongdoing, i.e., his decision not to pay plaintiffs, and consciously disregarded a substantial and unjustifiable risk that he would violate his fiduciary duties when he used assets of All Seasons to pay other business expenses.  The alleged expenses paid in lieu of payment to plaintiffs include All Seasons' payroll, through which defendant was paid a salary, entertainment, travel, country

club membership, dining room expenses at the country club, rent to his own closely held corporation, and his own personal mortgage; all of which plaintiffs claim "benefitted no one other than" defendant.

Although plaintiffs reference payments made through All Seasons for defendant's personal mortgage, plaintiffs fail to mention that defendant and Egan both testified that the mortgage was taken against defendant's home in order to loan All Seasons $200,000 in further effort to keep the company operating and paying its creditors, including plaintiffs. Def. Aff. ¶ 11, 12; Egan Dep. 32:3-7.  Further, defendant testified that he borrowed another $30,000 from his father-in-law to put into the business, and, therefore, personally contributed $230,000 of his own funds into the operation of All Seasons within the last year of its operation.  *Id*.  With respect to the rent payments made by All Seasons to Hilton Avenue Associates LLC[8], defendant contends that the rent was equivalent to the mortgage payment required each month.  November 2014 Dep. 13:14-14:4.  Additionally, defendant claims that he was personally paying the Hilton Avenue Associates LLC mortgage for six months. November 2014 Dep. 17:18-18:10.

Because the Court concludes that more than one reasonable inference may be drawn based on defendant's conduct while All Seasons struggled financially, and witness credibility is vitally important to assessing mental state, there is a genuine dispute as to a material fact i.e., defendant's intent, and, thus, a finding that defendant committed a defalcation while acting in a fiduciary capacity cannot be made at this juncture.  The evidence submitted by plaintiffs on this material question requires an assessment of weight and credibility.  As noted above, on a motion for summary judgment, the Court's job is "not to weigh the evidence or resolve issues of fact." *Lucente*, 310 F.3d at 254.  While plaintiffs will have an opportunity

---

[8] Defendant and Henneborn are the owners of Hilton Avenue Associates LLC with defendant having a 70% ownership interest and Henneborn 30%.  April 2014 Dep. 31:8-32:3.

at trial to persuade the Court that their debt arose out of defendant's defalcation, they have not carried their burden as movant to warrant summary judgment.

**VI.**    <u>**Conclusion**</u>

For the foregoing reasons, plaintiffs' motion for summary judgment is denied.  The parties are directed to appear before the Court for a status conference on August 17, 2017 at 10:00 a.m.

**SO ORDERED**.



**Dated: July 19, 2017**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**